STEVEN CRAIG *v.* STAFFORD CONSTRUCTION, INC., ET AL.
(SC 17073)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued May 18—officially released September 14, 2004

*Neil Johnson*, for the appellant (plaintiff).

*Ralph W. Johnson III*, with whom was *Kevin J. Greene*, for the appellees (named defendant et al.).

*Opinion*

BORDEN, J. The dispositive issue in this certified appeal is whether the Appellate Court properly concluded that an investigation by the city of Hartford police department's internal affairs division constituted a quasi-judicial proceeding, thereby affording absolute immunity to the citizen complainant whose claim gave rise to the investigation. The plaintiff, Steven Craig, appeals, following our grant of certification,[1] from the judgment of the Appellate Court affirming the trial court's grant of summary judgment in favor of the defendants, Eugene Ramistella and his employer, Stafford Construction, Inc. (Stafford).[2] The plaintiff claims that

---

[1] We granted the plaintiff's petition for certification for appeal limited to the following issue: "Did the Appellate Court properly determine that an internal affairs investigation conducted by the Hartford police department is a quasi-judicial proceeding so that statements made in the course of such a proceeding are entitled to an absolute privilege?" *Craig* v. *Stafford Construction, Inc.*, 266 Conn. 916, 833 A.2d 466 (2003).

[2] The plaintiff originally brought a claim against Ramistella, Stafford, and Miguel Aceves, another employee of Stafford. Aceves was defaulted in the trial court and did not join the remaining defendants' answer or their motion for summary judgment. See *Craig* v. *Stafford Construction, Inc.*, 78 Conn. App. 549, 550 n.1, 827 A.2d 793 (2003). Aceves, therefore, is not involved in this appeal. Accordingly, we refer to Ramistella and Stafford collectively as the defendants.

the Appellate Court improperly concluded that an internal affairs investigation conducted by the Hartford police department (department) constituted a quasi-judicial proceeding, thereby triggering the doctrine of absolute immunity. We affirm the judgment of the Appellate Court.

The plaintiff, a police officer with the department, brought this defamation action against the defendants claiming that they had defamed him when they filed a citizen complaint with the department alleging that he had directed racial slurs toward them at a construction site. The trial court granted the defendants' motion for summary judgment on the ground that, because the internal affairs investigation constituted a quasi-judicial proceeding, the allegedly defamatory statements were entitled to an absolute privilege. The Appellate Court affirmed the judgment of the trial court. *Craig* v. *Stafford Construction, Inc.*, 78 Conn. App. 549, 561, 827 A.2d 793 (2003). This certified appeal followed.

The following facts and procedural history were set forth in the opinion of the Appellate Court. "On March 17, 1997, the plaintiff accepted a private duty job offered by Stafford at a construction site at 1700 Main Street in Hartford. Ramistella was employed by Stafford and was working on the construction site that day. During a coffee break, the plaintiff made allegedly derogatory racial comments regarding the purpose of the construction project.

"On April 14, 1997, Ramistella filed a citizen complaint with the internal affairs division [of the department]. The internal affairs division conducted an investigation and formally charged the plaintiff with 'conduct unbecoming of a police officer.' During the investigatory process, Ramistella made a false state-

ment regarding the March 17, 1997 incident.[3] A hearing was held on June 16, 1998, at which Ramistella withdrew his complaint.[4] Several months later, the plaintiff was found not guilty." Id., 552–53.

Thereafter, "[t]he plaintiff . . . brought a defamation action against . . . Ramistella and Miguel Aceves, as well as . . . Stafford . . . . In his second amended complaint . . . the plaintiff alleged that, in a citizen complaint against him, the defendants knowingly and falsely had accused him of having made derogatory racial comments. The plaintiff further alleged that, as a result of these allegedly false statements, he had suffered emotional harm and loss of respect and had been turned down for several requested promotions.

"The defendants denied the allegations of the plaintiff and asserted, as a special defense, that Ramistella's statements were not actionable because of the doctrine of absolute immunity. Ramistella's immunity, they alleged, arose out of the fact that the statements of which the plaintiff complained had been made in the course of an investigation conducted by the internal affairs division of the . . . department. The defendants claimed that the investigation was a quasi-judicial proceeding . . . [and] the defendants moved for summary judgment on the basis of their claim of absolute immunity. . . . [The trial] court granted the motion and rendered judgment in their favor." Id., 550–51.

The plaintiff thereafter appealed to the Appellate Court, claiming that the trial court improperly had concluded that Ramistella's statements were protected by

---

[3] "As with the defendants' motion for summary judgment before the trial court, the defendants, for purposes of this appeal, do not challenge the plaintiff's contention that the statements made regarding the plaintiff were false." *Craig* v. *Stafford Construction, Inc.*, supra, 78 Conn. App. 552 n.3.

[4] "Ramistella withdrew his complaint because he believed that the March 17, 1997 incident was nothing more than a misunderstanding." *Craig* v. *Stafford Construction, Inc.*, supra, 78 Conn. App. 553 n.4.

the doctrine of absolute immunity. Id., 551. The Appellate Court disagreed with the plaintiff, and affirmed the trial court's grant of summary judgment. Id., 561. Specifically, the Appellate Court concluded that the internal affairs investigation constituted a quasi-judicial proceeding because it involved the exercise of discretion at different levels of the process and included an investigation specifically intended to ascertain facts. Id., 556–57. The Appellate Court further concluded that affording complaints of police misconduct made to the department's internal affairs division absolute immunity "serves the public policy of protecting free speech that furthers the interests of a democratic society." Id., 561.

On appeal to this court, the plaintiff claims that the Appellate Court improperly concluded that the investigation conducted by the internal affairs division constituted a quasi-judicial proceeding. We disagree.

Before addressing the merits of the plaintiff's claim on appeal, we note the standard that governs our review in the present case. "[T]he standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 514, 825 A.2d 72 (2003). In addition, the determination of whether an internal affairs investigation constitutes a quasi-judicial proceeding is a question of law over which our review is plenary. Within this limitation, however, whether a particular proceeding is quasi-judicial in

nature, for the purposes of triggering absolute immunity, will depend on the particular facts and circumstances of each case. With this standard of review in mind, therefore, we turn to the plaintiff's claim on appeal.

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Citations omitted; internal quotation marks omitted.) *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004).

"The effect of an absolute privilege in a defamation action [however] is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasijudicial in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 565–66, 606 A.2d 693 (1992).

"The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether

the hearing is public or not. It includes, for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Internal quotation marks omitted.) Id., 566. In addition, this court previously has delineated several factors that assist in determining whether a proceeding is quasi-judicial in nature. These factors include "whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." Id., 567. "Further, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." Id.

In *Kelley*, we concluded that schoolteacher license revocation proceedings before the state board of education were quasi-judicial in nature. Id., 571. In support of that determination, we noted that the proceedings had to conform to statutory regulations that listed well delineated causes for license revocation. Id., 568. In addition, the request for revocation was taken under oath and had to be filed with the secretary for the state board of education. Id., 568–69. If probable cause existed for revocation of the teaching certificate, the teacher was afforded formal notice of the decertification proceedings and the teacher could demand a formal hearing. Id., 569. At the hearing, the teacher was entitled to counsel, to be present during the hearing, and to cross-examine all witnesses. Id., 570. At the conclusion of the hearings, the state board of education was

required to state in writing the reason for its decision and notify all parties to the proceedings. Id.

Within that factual environment, it was clear to us that "the state board of education possessed significant regulatory authority to conduct proceedings of a quasi-judicial nature. The detailed procedures, which ensure the reliability of teacher decertification proceedings, and the compelling public policy concern for the protection of school age children persuade us that the decertification proceedings before the state board of education were quasijudicial in nature, and that any statements made as a requisite step in those proceedings were absolutely privileged." Id., 571; see also *Petyan* v. *Ellis*, 200 Conn. 243, 252, 510 A.2d 1337 (1986) (absolute privilege afforded to letter sent to employment security division of state labor department regarding reasons employee was terminated); *Preston* v. *O'Rourke*, 74 Conn. App. 301, 312, 811 A.2d 753 (2002) (arbitration entered into pursuant to collective bargaining agreement constituted quasi-judicial proceeding).

In the present case, the undisputed deposition testimony[5] revealed the details of the process of an internal affairs investigation by the department. That process is governed by two sources: (1) the department's official code of conduct; and (2) the collective bargaining agreement between the city of Hartford and the union representing the police officers. The process provides as follows.

When a complaint is made regarding the alleged conduct of one of the department's officers, it is put into written form and sent to the internal affairs division.

---

[5] The testimony detailing the process of an internal affairs investigation was derived from two sources: Richard Calderone, an internal affairs investigator with the department, and Louis Wolf, the department advocate involved in the present case. As discussed later in this opinion, the department advocate acts as the prosecutor in cases involving claims of disciplinary infractions within the department.

Thereafter, the commander of the internal affairs division determines whether the charges will be investigated by the officer's immediate supervisor or by an internal affairs investigator. If an internal affairs investigator is assigned, as was done in the present case, the investigator acts as a fact finder by interviewing witnesses and interviewing the officer who is the subject of the complaint. The witnesses give sworn statements to the investigator during the investigation, and the form on which they sign their statement informs the witness that he or she can be criminally liable for filing a false statement. The investigator then compiles a report with his findings and presents it to the commander of the internal affairs division.

After reviewing the investigator's report, the commander of the internal affairs division then forwards the report to a bureau commander, who reviews it in order to determine if the department should further investigate the claims made against the officer. If the bureau commander determines that there should be further investigation, the case is given to the department advocate, who represents the chief of police and the department, and the advocate "prosecutes" the case against the officer. The advocate then reviews the charges against the officer and consults with the chief of police regarding what further action should be taken. At this point, the chief of police has several options, including: ordering command discipline, which is documented counseling, for the officer; issuing an oral reprimand to the officer; issuing a written reprimand; ordering an expedited hearing, which carries a penalty of between one and five days suspension; or ordering a formal hearing, which carries a penalty of six or more days suspension, and includes possible termination. In the present case, the chief of police at the time, Joseph Croughwell, ordered that a formal hearing be held.

Once the decision to hold a formal hearing has been made, the officer is given notice of the charges against him pursuant to the department's code of conduct and the date of the formal hearing. At the formal hearing, the officer has a right to be represented by counsel. In the present case, the plaintiff was represented by an attorney assigned to him by his union. The hearing officer presiding over the formal hearing is chosen by the officer from a pool consisting of three department captains. In addition, the department subpoenas witnesses to testify at the formal hearing, and in the present case, it is undisputed that the witnesses complied with the subpoena and testified before the hearing officer. Witnesses who testify at the formal hearing are sworn and must testify under oath. The officer also has the right to cross-examine the witnesses. In addition, at the formal hearing, a city attorney is present in order to rule on questions of evidence. During the hearing, the hearing officer takes notes on the testimony and evidence presented and, thereafter, transcribes his notes into typed form, which constitutes the record for the purposes of the hearing. After the hearing is concluded, the hearing officer makes findings and a recommendation of decision regarding the appropriate punishment.

Thereafter, the hearing officer's findings of facts and recommendations are reviewed by the chief of police, who can adopt the hearing officer's findings, modify those findings or reject the findings. If the officer is not satisfied with the decision by the chief of police, the officer has a right to appeal to the personnel board of the city of Hartford. Thereafter, the officer has a right to appeal to the state labor board.

With this background in mind, we conclude that the investigation conducted by the internal affairs division constituted a quasi-judicial proceeding and, accordingly, any statements made within the context of that investigation are an afforded absolute privilege. With

regard to the first factor articulated in *Kelley* v. *Bonney*, supra, 221 Conn. 567, it is clear that the investigation entails the exercise of judgment and discretion at several levels of the process. First, the investigator makes recommendations through his initial report after conducting the investigation into the complaint. Second, the hearing officer exercises discretion and judgment by making recommended findings and proposed punishments after the conclusion of the formal hearing. Finally, the chief of police exercises discretion and judgment by either adopting, modifying or rejecting the hearing officer's findings. In addition, the officer's bureau commander exercises discretion in determining whether further investigation should continue into the allegations. Similarly, pursuant to the second prong of *Kelley* v. *Bonney*, supra, 567, both the initial internal affairs investigator and the hearing officer ascertain and determine facts. As the Appellate Court noted, "[a] primary function of the internal affairs process is to investigate and to ascertain facts." *Craig* v. *Stafford Construction, Inc.*, supra, 78 Conn. App. 557.

With regard to the third factor outlined in *Kelley* v. *Bonney*, supra, 221 Conn. 567, namely, whether the body makes binding orders and judgments, the undisputed testimony revealed that, after both the internal affairs investigator and the hearing officer make their findings of fact and recommendations, the chief of police makes the final determination within the department itself regarding the outcome of the allegations made against the officer. The decision by the chief of police is appealable to the personnel department of the city of Hartford. The fact that that decision is appealable, however, does not outweigh the other factors in favor of the determination that the investigation is a quasi-judicial proceeding. In addition, although that decision is appealable, any punishment meted out by

the chief of police can be ordered served immediately, notwithstanding any subsequent appeal by the officer.

The fourth factor discussed in *Kelley* v. *Bonney*, supra, 221 Conn. 567, namely, whether the personal or property rights of private persons are affected, also supports a conclusion that the internal affairs investigation is quasi-judicial in nature. As the testimony revealed, a possible consequence of a citizen complaint that has reached the formal hearing stage is suspension or termination of the officer. Accordingly, the potential impact on the officer's employment status certainly affects the personal or property rights of the officer. See *Preston* v. *O'Rourke*, supra, 74 Conn. App. 312 (arbitration regarding appropriateness of discharge from employment constitutes quasi-judicial proceeding). Further, the investigation process clearly entitled the officer to examine witnesses and "hear the litigation of the issues on a hearing" during the formal hearing stage of the proceedings, thereby fulfilling the fifth factor discussed in *Kelley* v. *Bonney*, supra, 567. The formal hearing process permits the officer to cross-examine witnesses and call witnesses on his or her own behalf. Moreover, the hearing officer takes detailed notes during the formal hearing and transcribes them into typed form, which constitutes an adequate record of the issues litigated at the formal hearing. Finally, the department can enforce its decisions by imposing a suspension of the officer's duties and pay, and can include termination. Thus, we conclude that, like the license revocation proceedings at issue in *Kelley*, the internal affairs investigation conducted in the present case constituted a quasi-judicial proceeding and, therefore, any statements made during the course of that investigation triggered the doctrine of absolute immunity from any subsequent defamation claim.

Our conclusion that statements made in connection with an internal affairs investigation are afforded an

absolute privilege also finds support in the case law from other states. The most persuasive example is *Miner* v. *Novotny*, 304 Md. 164, 166, 498 A.2d 269 (1985), in which the plaintiff, a deputy county sheriff, brought an action against the defendant for making allegedly defamatory statements about him in a complaint made to the county sheriff's office. Prior to the plaintiff's cause of action, the defendant had brought a complaint against the plaintiff for allegedly mistreating the defendant during an arrest. Id. After an internal affairs investigation into the incident, the sheriff's department concluded that the plaintiff was not guilty of any misconduct. Id. The plaintiff's claim for defamation followed soon thereafter. Id., 167. After the trial court granted a demurrer on the defamation claim, the plaintiff appealed.

On appeal, Maryland's highest court addressed the question of whether the internal affairs investigation that occurred in the plaintiff's case constituted a quasi-judicial proceeding. It first noted that the procedural safeguards provided by the statutory scheme governing disciplinary proceedings were adequate to "minimize the occurrence of defamatory statements." (Internal quotation marks omitted.) Id., 174. The procedural safeguards that existed in *Miner* included, inter alia, subjecting a person who makes a false complaint to criminal liability, informing the officer of the nature of the investigation and the right to representation by counsel, and making available to the officer a complete record of the investigation. Id. In addition, the Maryland court noted that during the hearing phase of the investigation, the officer is represented by counsel, and is given the opportunity to present his or her case. Id., 175. Further, each party to the hearing may request that the hearing officers issue summonses compelling the testimony of witnesses. Id.

With this background in mind, the Maryland Court of Appeals next explained that citizen complaints of alleged police misconduct and the disciplinary procedures that follow from those complaints, "serve a public function of vital importance by providing a mechanism through which abuses may be reported to the proper authorities, and the abusers held accountable." Id., 176. The Maryland court went on to note: "The viability of a democratic government requires that the channels of communication between citizens and their public officials remain open and unimpeded. Were complaints such as [the defendant's] not absolutely privileged, the possibility of incurring the costs and inconvenience associated with defending a defamation suit might well deter a citizen with a legitimate grievance from filing a complaint. We therefore conclude that the possible harm a false brutality complaint may cause to a law-enforcement officer's reputation, despite the procedural safeguards provided by [the statutory scheme governing disciplinary proceedings], is outweighed by the public's interest in encouraging the filing and investigation of valid complaints." Id.;[6] see also *Gray* v. *Rodriguez*, 481 So. 2d 1298, 1299–1300 (Fla. App. 1986); *Magnus* v. *Anpatiellos*, 130 App. Div. 2d 719, 720, 516 N.Y.S.2d 31 (1987); *Campo* v. *Rega*, 79 App. Div. 2d 626, 433 N.Y.S.2d 630 (1980), appeal denied, 52 N.Y.2d 705,

---

[6] The court in *Miner* finally noted that, "[w]e are not unmindful of the deeply disturbing and demoralizing effect a false accusation of brutality may have on a law enforcement officer. . . . [N]o one likes to hear, or have his family and friends hear, such allegations. . . . It is regrettable that our holding here will, in some instances, afford an immunity to the evil disposed and malignant slanderer. . . . We are satisfied, however, that the inhibition of citizens' criticism of those entrusted with their protection is a far worse evil. Accordingly, we hold that a citizen's brutality complaint filed against a law-enforcement officer is protected by the same absolute privilege as are statements made by witnesses in judicial proceedings, and that such complaints cannot, therefore, serve as the basis for a defamation suit." (Citations omitted; internal quotation marks omitted.) *Miner* v. *Novotny*, supra, 304 Md. 177.

419 N.E.2d 876, 437 N.Y.S.2d 1028 (1981); *Putter* v. *Anderson*, 601 S.W.2d 73, 76–77 (Tex. App. 1980); but see *Barge* v. *Ransom*, 30 S.W.3d 889, 892 (Mo. App. 2000) (affording qualified privilege to complaints made against police officers); *Elder* v. *Holland*, 208 Va. 15, 21–22, 155 S.E.2d 369 (1967) (same).

We agree with the reasoning of the Maryland Court of Appeals, particularly regarding the public policy served by the doctrine of absolute immunity in this context, and we adopt it in the present case. Accordingly, we conclude that the internal affairs division investigation conducted by the department in the present case constituted a quasi-judicial proceeding and, therefore, that statements made in connection with that investigation are afforded an absolute privilege.

The defendant, however, relies on the fact that any decision or recommendation made by the hearing officer can be overruled by the chief of police. Specifically, the defendant claims that, because the chief of police can modify or even reject the hearing officer's findings of facts and recommendations regarding punishment, the internal affairs investigation cannot be quasi-judicial in nature. As we repeatedly have noted, however, "[o]nce it is determined that a proceeding is quasi-judicial in nature, the absolute privilege that is granted to statements made in furtherance of it *extends to every step of the proceedings until final disposition.*" (Emphasis added; internal quotation marks omitted.) *Kelley* v. *Bonney*, supra, 221 Conn. 566. Thus, as the review conducted by the chief of police was merely the final step of the internal affairs investigation, it constituted a part of the proceedings that are quasi-judicial in nature.

The plaintiff also claims that, because the department lacks the authority to subpoena witnesses, the investigation does not meet the fifth factor described in *Kelley*,

that the body "examine witnesses and hear the litigation of the issues on a hearing . . . ." Id., 567. In support of his claim that the department lacks the authority to subpoena witnesses to testify before a formal hearing, the plaintiff relies on the testimony of Richard Calderone, an investigator with the department's internal affairs division. During his deposition, Calderone opined that the subpoenas issued by the department are not enforceable. Specifically, in response to a question regarding whether the department issues subpoenas to civilians to appear at the formal hearing, Calderone stated: "They do to a hearing, however, the subpoena doesn't hold any weight. Even though they can subpoena somebody to the second step or third step [in the internal affairs investigation process], it doesn't hold any [legal] weight . . . it has no value." We need not address the authority of the department to issue subpoenas to nonpolice officers in the context of an internal affairs formal hearing. It is sufficient for the purposes of this appeal that, at the formal hearing involving the plaintiff in the present case, two witnesses[7] testified in compliance with a subpoena and the plaintiff was afforded the opportunity to cross-examine those witnesses. Moreover, even if we were to assume that the department lacked the authority to subpoena witnesses to the formal hearing, the undisputed testimony revealed that during its investigation, the internal affairs investigator interviews witnesses and takes their sworn statements. We further note that even if the department had not subpoenaed witnesses to testify before the formal hearing, the lack of subpoena power is not necessarily dispositive of the question of whether the proceedings are quasi-judicial in nature. See *Thomas* v. *Petrulis*, 125 Ill. App. 3d 415, 420, 465 N.E.2d 1059 (1984) ("[a] quasi-judicial body need not possess

---

[7] Both Ramistella and Aceves testified at the formal hearing in response to subpoenas issued by the department in the present case.

all six powers; however, the more powers it possesses, the more likely the body is acting in a quasi-judicial manner").[8]

The plaintiff next claims that, regardless of whether the internal affairs investigation constituted a quasi-judicial proceeding, public policy concerns counsel against affording an absolute privilege to defamatory statements made in a citizen complaint. We disagree.

As stated in *Miner*, and discussed previously in this opinion, if citizen complaints such as those involved in the present case were not absolutely privileged, "the possibility of incurring the costs and inconvenience associated with defending a defamation suit might well deter a citizen with a legitimate grievance from filing a complaint." *Miner* v. *Novotny*, supra, 304 Md. 176. Put differently, as the Appellate Court in the present case noted, "[the policy of affording absolute immunity] reflects the unspoken reality that, if there were no absolute immunity, good faith criticism of governmental misconduct might be deterred by concerns about unwarranted litigation." *Craig* v. *Stafford Construction, Inc.*, supra, 78 Conn. App. 557; see also *Lewis* v. *Benson*, 101 Nev. 300, 301, 701 P.2d 751 (1985) ("the application of an absolute privilege to civilians filing complaints with an internal affairs bureau sufficiently promotes the interests of the public to warrant the availability of an absolute privilege"). Moreover, although we recognize the debilitating affect that a false allegation of racial discrimination can have on a police

---

[8] The plaintiff also contends that because police officers are not "private citizens," the department's investigation can not "affect the personal or property rights of private persons" pursuant to the fourth factor outlined in *Kelley* v. *Bonney*, supra, 221 Conn. 567. Although it is true that police officers may be subject to a higher standard of proof in defamation cases, i.e., that the statement was published with malice or reckless disregard of the truth, they are still private citizens with respect to whether the department has the power to deprive them of personal or property rights. Accordingly, we reject the plaintiff's claim.

officer, we conclude that the policy of encouraging citizen complaints against those people who wield extraordinary power within the community outweighs the need to protect the reputation of the police officer against whom the complaint is made.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.